**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| ENVIRONMENTAL DEFENSE FUND, *et al.*,<br><br>*Petitioners*,<br><br>v.<br><br>LEE ZELDIN, Administrator, U.S. ENVIRONMENTAL PROTECTION AGENCY, and U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Respondents*. | ) | Case No. 25-1275 |

**PETITION FOR REVIEW**

Pursuant to Clean Air Act Section 307(b)(1), 42 U.S.C. § 7607(b)(1); Federal Rule of Appellate Procedure 15; and D.C. Circuit Rule 15, Environmental Defense Fund, Center for Biological Diversity, Clean Air Council, Dakota Resource Council, Earthworks, Environmental Law & Policy Center, Food & Water Watch, Fort Berthold Protectors of Water and Earth Rights ("Ft. Berthold POWER"), GreenLatinos, Natural Resources Defense Council, and Sierra Club hereby petition this Court for review of the final action of Respondents Lee Zeldin, Administrator, United States Environmental Protection Agency, and United States Environmental Protection Agency, entitled "Oil and Natural Gas Sector Climate Review: Extension of Deadlines

in Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources," and published in the Federal Register at 90 Fed. Reg. 55,671 (Dec. 3, 2025). A copy of EPA's final action is attached to this petition.

DATED: December 3, 2025

Respectfully submitted,


*s/ Margaret A. Coulter*
Margaret A. Coulter
Jason C. Rylander
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, D.C. 20005
(202) 961-4820
mcoulter@biologicaldiversity.org
jrylander@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

*/s/ Darin Schroeder*
Darin Schroeder
Mary Sasso
Francis W. Sturges, Jr.
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 624-0234
dschroeder@catf.us
msasso@catf.us
fsturges@catf.us

*Counsel for Earthworks*

*/s/ Grace M. Smith*
Grace M. Smith
Rosalie Winn
Edwin LaMair
Leah Fattor*
Peter Zalzal
Vickie Patton
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7560
gsmith@edf.org
rwinn@edf.org
elamair@edf.org
lfattor@edf.org
pzalzal@edf.org
vpatton@edf.org
*Application for D.C. Circuit admission pending.

Sean H. Donahue
Keri R. Davidson*
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com
keri@donahuegoldberg.com
*Not admitted in District of Columbia.

*/s/ Wendy Bloom*
Wendy Bloom
Max Lopez
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
wbloom@elpc.org
mlopez@elpc.org

*Counsel for Environmental Law & Policy Center*

*/s/ Meredith Hankins*
Meredith Hankins
David Doniger
Abirami Vijayan*
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, D.C. 20005
(646) 448-3818
mhankins@nrdc.org
*Not admitted in District of Columbia.

*Counsel for Natural Resources Defense Council*

*Counsel for Environmental Defense Fund*

*/s/ Alexandra O. Schluntz*
Alexandra O. Schluntz
Robin Cooley
Earthjustice
1125 17th Street #1010
Denver, CO 80202
(303) 996-9612
aschluntz@earthjustice.org
rcooley@earthjustice.org

*Counsel for Clean Air Council, Dakota Resource Council, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights, and GreenLatinos*

*/s/ Andres Restrepo*
Andres Restrepo
Sierra Club
50 F St., NW, Eighth Floor
Washington, D.C. 20001
(856) 240-0964
Andres.Restrepo@sierraclub.org

*Counsel for Sierra Club*

**RULE 26.1 DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioners Environmental Defense Fund, Center for Biological Diversity, Clean Air Council, Dakota Resource Council, Earthworks, Environmental Law & Policy Center, Food & Water Watch, Fort Berthold Protectors of Water and Earth Rights ("Ft. Berthold POWER"), GreenLatinos, Natural Resources Defense Council, and Sierra Club state that they are non-profit environmental and public health organizations that do not have any parent or publicly held corporation that owns 10% or more of its stock.

DATED: December 3, 2025


*s/ Margaret A. Coulter*
Margaret A. Coulter
Jason C. Rylander
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, D.C. 20005
(202) 961-4820
mcoulter@biologicaldiversity.org
jrylander@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

*/s/ Grace M. Smith*
Grace M. Smith
Rosalie Winn
Edwin LaMair
Leah Fattor*
Peter Zalzal
Vickie Patton
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7560
gsmith@edf.org
rwinn@edf.org
elamair@edf.org
lfattor@edf.org
pzalzal@edf.org
vpatton@edf.org
*Application for D.C. Circuit admission pending.

*/s/ Darin Schroeder*
Darin Schroeder
Mary Sasso
Francis W. Sturges, Jr.
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 624-0234
dschroeder@catf.us
msasso@catf.us
fsturges@catf.us

*Counsel for Earthworks*

*/s/ Wendy Bloom*
Wendy Bloom
Max Lopez
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
wbloom@elpc.org
mlopez@elpc.org

*Counsel for Environmental Law & Policy Center*

*/s/ Meredith Hankins*
Meredith Hankins
David Doniger
Abirami Vijayan*
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, D.C. 20005
(646) 448-3818
mhankins@nrdc.org
*Not admitted in District of Columbia.

*Counsel for Natural Resources Defense Council*

Sean H. Donahue
Keri R. Davidson*
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com
keri@donahuegoldberg.com
*Not admitted in District of Columbia.

*Counsel for Environmental Defense Fund*

*/s/ Alexandra O. Schluntz*
Alexandra O. Schluntz
Robin Cooley
Earthjustice
1125 17th Street #1010
Denver, CO 80202
(303) 996-9612
aschluntz@earthjustice.org
rcooley@earthjustice.org

*Counsel for Clean Air Council, Dakota Resource Council, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights, and GreenLatinos*

*/s/ Andres Restrepo*
Andres Restrepo
Sierra Club
50 F St., NW, Eighth Floor
Washington, D.C. 20001
(856) 240-0964
Andres.Restrepo@sierraclub.org

*Counsel for Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that this 3rd day of December, 2025, the foregoing Petition for Review and Rule 26.1 Disclosure Statement were served on Respondents by sending a copy via First-Class Mail to each of the following addresses:

Administrator Lee M. Zeldin
United States Environmental Protection Agency
Office of the Administrator - 1101A
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Pamela Bondi
Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

United States Environmental Protection Agency
Correspondence Control Unit
Office of General Counsel - 2311
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

*/s/ Grace M. Smith*
Grace M. Smith

**ATTACHMENT**:

"Oil and Natural Gas Sector Climate Review: Extension of Deadlines in Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources," 90 Fed. Reg. 55,671 (Dec. 3, 2025).

*Unfunded Mandates Reform Act*

This rule does not impose an unfunded mandate on State, local, or Tribal governments, or the private sector of more than $100 million per year. The rule does not have a significant or unique effect on State, local, or Tribal governments or the private sector. This determination is based on an analysis of the corresponding Federal regulations, which were determined not to impose an unfunded mandate. Therefore, a statement containing the information required by the Unfunded Mandates Reform Act (2 U.S.C. 1531 *et seq.*) is not required.

**List of Subjects in 30 CFR Part 948**

Intergovernmental relations, Surface mining, Underground mining.

**Ben H. Owens,**

*Acting Regional Director, North Atlantic—Appalachian Region.*

For the reasons set out in the preamble, 30 CFR part 948 is amended as set forth below:

## PART 948—WEST VIRGINIA

■ 1. The authority citation for part 948 continues to read as follows:

**Authority:** 30 U.S.C. 1201 *et seq.*

■ 2. Section 948.12 is amended by adding paragraph (k) to read as follows:

**§ 948.12 State statutory, regulatory, and proposed program amendment provisions not approved.**

* * * * *

(k) We are not approving the proposed incidental boundary revision (IBR) regulation clause at subparagraph 3.29.b.2 which reads, ''and other mining operations including but not limited to loadout operations, coal refuse disposal operations and coal preparation operations'' that was submitted in the State program amendment dated May 11, 2009.

* * * * *

■ 3. Section 948.15 is amended by adding a new entry to the table in chronological order by ''Date of publication of final rule'' to read as follows:

**§ 948.15 Approval of West Virginia regulatory program amendments.**

* * * * *

| Original amendment submission dates | Date of publication of final rule | Citation/description |
|---|---|---|
| * * | * * | * * * |
| May 11, 2009, May 22, 2009, July 6, 2009. | December 3, 2025 ........................ | CSR 38–2–3.15 (approved); 38–2–3.28.b.1 (qualified approval); 38–2–3.29.a (qualified approval); 38–2–3.29.b.2 (not approved); 38–2–3.29.d. (approved); 38–2–3.29.e. (qualified approval); 38–2–7.8. (qualified approval); 38–2–9.3.f. (approved); 38–2–11 (approved); W.Va. Code 5B–2A–3 (approved); 5B–2A–5 (approved); 5B–2A–6 (approved); 5B–2A–9 (approved); 22–3–10(a)(3) (qualified approval); 22–3–11 (approved). |

[FR Doc. 2025–21782 Filed 12–2–25; 8:45 am]

BILLING CODE 4310–05–P

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 60

### [EPA–HQ–OAR–2025–0162; FRL–12675–02–OAR]

### RIN 2060–AW61

### Oil and Natural Gas Sector Climate Review: Extension of Deadlines in Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The U.S. Environmental Protection Agency (EPA) is taking final action to respond to comments on an interim final rule (IFR) related to the new source performance standards (NSPS) and emissions guidelines (EG) for crude oil and natural gas facilities established at 40 CFR part 60, subparts OOOOb and OOOOc. Specifically, the EPA is responding to comments on the IFR published in the **Federal Register** on July 31, 2025, that extended deadlines for certain provisions related to control devices, equipment leaks, storage vessels, process controllers, and covers/closed vent systems; extended the date for future implementation of the Super Emitter Program (SEP); and extended the State plan submittal deadline in OOOOc. After carefully considering comments received and testimony provided at a public hearing, the EPA concludes that the amendments made in the IFR are warranted and is making further changes to the compliance deadlines in the IFR related to net heating value (NHV) monitoring and the initial reporting deadline.

**DATES:** This final rule is effective on December 3, 2025.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2025–0162. All documents in the docket are available on the *https://www.regulations.gov* website. Although listed, some information is not publicly available, *e.g.,* Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only as pdf versions that can only be accessed on the EPA computers in the docket office reading room. Certain data bases and physical items cannot be downloaded from the docket but may be requested by contacting the docket office at (202) 566–1744. The docket office has up to 10 business days to respond to these requests. With the exception of such material, publicly available docket materials are available electronically in *https://www.regulations.gov* or on the EPA computers in the docket office reading room at the EPA Docket Center, WJC West Building, Room Number 3334, 1301 Constitution Ave. NW, Washington, DC. The Public Reading Room hours of operation are 8:30 a.m. to 4:30 p.m. Eastern Time (ET), Monday through Friday. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the EPA Docket Center is (202) 566–1742.

**FOR FURTHER INFORMATION CONTACT:** Amy Hambrick, Sector Policies and

Programs Division (E143–05), Office of Air Quality Planning and Standards, U.S. Environmental Protection Agency, 109 T.W. Alexander Drive, P.O. Box 12055, RTP, North Carolina 27711; telephone number: (919) 541–0964; and email address: *hambrick.amy@epa.gov.* Additional questions may be directed to the following email address: *O&GMethaneRule@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

*Preamble acronyms and abbreviations.* Throughout this document the use of ''we,'' ''us,'' or ''our'' is intended to refer to the EPA. We use multiple acronyms and terms in this preamble. While this list may not be exhaustive, to ease the reading of this preamble and for reference purposes, the EPA defines the following terms and acronyms here:

BSER best system of emission reduction
CAA Clean Air Act
CBI Confidential Business Information
CFR Code of Federal Regulations
CRA Congressional Review Act
CVS Closed Vent System
ECD Enclosed Combustion Device(s)
EG Emission Guideline
EPA Environmental Protection Agency
FR Federal Register
GHG greenhouse gases
IFR Interim Final Rule
Low-E low-emissions
LPE Legally and Practically Enforceable
NAICS North American Industry Classification System
NIE no identifiable emissions
NHV net heating value
NSPS new source performance standards
NTTAA National Technology Transfer and Advancement
OAQPS Office of Air Quality Planning and Standards
OMB Office of Management and Budget
OGI optical gas imaging
PRA Paperwork Reduction Act
RFA Regulatory Flexibility Act
RIA regulatory impact analysis
RIN Regulatory Information Number
RTC Response to Comments
SEP Super Emitter Program
SIC standard industrial classification
TAR Tribal Authority Rule
TIP Tribal Implementation Plan
TOC Total Organic Compound
UMRA Unfunded Mandates Reform Act
U.S.C. United States Code
VE Visible Emission
VOC volatile organic compound

**Table of Contents**

I. General Information
A. Does this action apply to me?
B. Where can I get a copy of this document and other related information?
C. What is the statutory authority for this final action?
D. Judicial Review and Administrative Review
II. Background and Summary
III. What amendments did we make in the 2025 interim final rule for the Crude Oil and Natural Gas NSPS and EG, and what are our final conclusions in this final rule?
A. Revised NSPS OOOOb for Control Devices
B. Revised NSPS OOOOb for Covers and Closed Vent Systems
C. Revised NSPS OOOOb for Equipment Leaks
D. Revised NSPS OOOOb for Process Controllers
E. Revised NSPS OOOOb for Storage Vessels
F. Revised NSPS OOOOb for Super Emitter Program
G. Revised NSPS OOOOb for Flare Pilot Flame and Alarm Requirements
H. Revised EG OOOOc for State Plan Submittal Deadline
I. Additional Time for NSPS OOOOb Initial Annual Report
IV. Statutory and Executive Order Reviews
A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review
B. Executive Order 14192: Unleashing Prosperity Through Deregulation
C. Paperwork Reduction Act (PRA)
D. Regulatory Flexibility Act (RFA)
E. Unfunded Mandates Reform Act (UMRA)
F. Executive Order 13132: Federalism
G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments
H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks
I. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use
J. National Technology Transfer and Advancement Act (NTTAA)
K. Congressional Review Act (CRA)

## I. General Information

### *A. Does this action apply to me?*

The source category that is the subject of this final action is the Crude Oil and Natural Gas source category regulated under CAA section 111, New Source Performance Standards. Table 1 summarizes the 2024 North American Industry Classification System (NAICS) codes for the source category.

TABLE 1—INDUSTRIAL SOURCE CATEGORIES AFFECTED BY THE NSPS AND EG

| Category | NAICS code | Examples of regulated entities |
|---|---|---|
| Industry | 211120 | Crude Petroleum Extraction. |
| | 211130 | Natural Gas Extraction. |
| | 221210 | Natural Gas Distribution. |
| | 486110 | Pipeline Distribution of Crude Oil. |
| | 486210 | Pipeline Transportation of Natural Gas. |
| Federal Government | | Not affected. |
| State and Local Government | | Affected. |
| Tribal Government | 921150 | American Indian and Alaska Native Tribal Governments. |

The NAICS codes outline the type of entities that this final action likely will affect. Other types of entities not listed in the table could also be affected by this action. The NSPS codified in 40 CFR part 60, subpart OOOOb, are directly applicable to affected facilities that begin construction, reconstruction, or modification after December 6, 2022. Federal, State, local, and Tribal government entities would not be affected by this action. If you have any questions regarding the applicability of this action to a particular entity, you should carefully examine the applicability criteria found in 40 CFR part 60, subparts OOOOb and OOOOc, and consult the person listed in the **FOR FURTHER INFORMATION CONTACT** section of this preamble, your State air pollution control agency with delegated authority for NSPS, or your EPA Regional Office.

The deadline extensions in 40 CFR part 60, subpart OOOOc do not impose binding requirements directly on existing sources. The EG codified in subpart OOOOc, applies to States in the development, submittal, and implementation of State plans to establish performance standards to reduce emissions of greenhouse gases (GHG) from designated facilities that are existing sources on or before December 6, 2022. Under the Tribal Authority Rule (TAR), eligible tribes may seek approval to implement a plan under CAA section 111(d) in a manner similar

to a state.[1] Tribes may, but are not required to, seek approval for treatment as a State for purposes of developing a Tribal Implementation Plan (TIP) implementing the EG codified in 40 CFR part 60, subpart OOOOc. The TAR authorizes tribes to develop and implement their own air quality programs, or portions thereof, under the CAA. However, it does not require tribes to develop a CAA program. Tribes may implement programs that are most relevant to their air quality needs. If a Tribe does not obtain the authority from the EPA to establish a TIP, the EPA has the authority to establish a Federal CAA section 111(d) plan for designated facilities that are located in areas of Indian country.[2] A Federal plan would apply to all designated facilities located in the areas of Indian country covered by the Federal plan unless and until the EPA approves a TIP applicable to those facilities.

*B. Where can I get a copy of this document and other related information?*

In addition to being available in the docket, an electronic copy of this final action is available on the internet at *https://www.epa.gov/controlling-air-pollution-oil-and-natural-gas-operations/2025-interim-final-rule-extend-compliance.* In accordance with 5 U.S.C. 553(b)(4), a brief summary of this rule may be found at *www.regulations.gov,* Docket ID No. EPA–HQ–OAR–2025–0162. Following publication in the **Federal Register**, the EPA will post the **Federal Register** version of the final rule and key documents at this same website.

*C. What is the statutory authority for this final action?*

The same CAA provision that provided authority to issue the regulations being amended and the July 2025 IFR—CAA section 111—provides the statutory authority to issue this final action, the change the EPA is making to the NHV monitoring compliance deadline, and the change to the initial reporting deadline.[3]

*D. Judicial Review and Administrative Review*

Under Clean Air Act (CAA) section 307(b)(1), judicial review of this final action is available only by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit by February 2, 2026. Under CAA section 307(b)(2), the requirements established by this final rule may not be challenged separately in any civil or criminal proceedings to enforce the requirements.

Section 307(d) applies to this final rule.[4] Section 307(d)(7)(B) provides a mechanism for the EPA to convene a proceeding for reconsideration ''[i]f the person raising an objection can demonstrate to the EPA that it was impracticable to raise such objection within [the period for public comment] or if the grounds for such objection arose after the period for public comment (but within the time specified for judicial review) and if such objection is of central relevance to the outcome of the rule.'' Any person seeking to make such a demonstration to us should submit a Petition for Reconsideration to the Office of the Administrator, U.S. Environmental Protection Agency, Room 3000, WJC South Building, 1200 Pennsylvania Ave. NW, Washington, DC 20460, with a copy to both the person(s) listed in the preceding **FOR FURTHER INFORMATION CONTACT** section, and the Associate General Counsel for the Air and Radiation Law Office, Office of General Counsel (Mail Code 2344A), U.S. Environmental Protection Agency, 1200 Pennsylvania Ave. NW, Washington, DC 20460.

## II. Background and Summary

In this section, the EPA summarizes relevant history to provide context for this final action. For further discussion of regulatory history for this source category and issues arising after promulgation of the most recent substantive amendments to the NSPS, please see section II.A of the preamble for the July 31, 2025 interim final rule (''2025 IFR'').[5]

On March 8, 2024, the EPA published a final rule for the Crude Oil and Natural Gas source category under CAA section 111(b) and (d) (''2024 final rule'').[6] The EPA finalized NSPS OOOOb for GHG and VOC emissions from new, modified, and reconstructed sources in this source category. The EPA also finalized EG OOOOc for GHG emissions from existing sources in this source category, along with various other regulatory amendments. The 2024 final rule became effective on May 7, 2024.

After publication of the 2024 final rule, the EPA received multiple petitions for reconsideration and determined, including through ongoing and recent communications with stakeholders and review of the relevant regulatory language, that certain discrete provisions in the 2024 final rule presented immediate problems related to compliance.[7] The EPA's review of the issues raised in petitions for reconsideration and other information presented to the EPA after promulgating the 2024 final rule, as well as the EPA's experience implementing certain aspects of the 2024 final rule and review of relevant regulatory text, resulted in the EPA issuing an IFR on July 31, 2025. In the 2025 IFR, the EPA amended certain compliance deadlines and timeframes for implementation in response to information received after promulgation of the 2024 final rule to address significant concerns, raised by stakeholders and through the EPA's own review, that certain regulatory provisions in the 2024 final rule were not workable or contained problematic regulatory language that prevented compliance.

The 2024 final rule covers many different types of individual emissions sources at thousands of facilities in the Crude Oil and Natural Gas source category across the country. The 2024 final rule included several provisions that subsequent developments have shown are unworkable on the original timeframes for compliance in that final rule. The EPA did not anticipate or intend these issues to result from the 2024 final rule, and it is in the public interest and consistent with the

[1] *See* 40 CFR part 49, subpart A.

[2] See the EPA's website, *https://www.epa.gov/tribal/tribes-approved-treatment-state-tas,* for information on those Tribes that have treatment as a State for specific environmental regulatory programs, administrative functions, and grant programs.

[3] 42 U.S.C. 7411.

[4] *See* 42 U.S.C. 7607(d)(1)(C). The EPA issued the July 31, 2025 IFR pursuant to CAA section 307(d)(1), which authorizes the issuance of a rule without prior notice and comment ''in the case of any rule or circumstance referred to in subparagraphs (A) or (B) of [APA section 533(b)].'' *Id.* 7607(d)(1); *see* 90 FR 35966, 35979 n.51 (July 31, 2025). We solicited post-promulgation comment on the revised compliance deadlines in the IFR and on whether the action should be further revised. *Id.* at 35980. We also granted a request for a public hearing and held a virtual public hearing on September 2, 2025, which provided an opportunity to offer oral comments on the revisions in the IFR, and extended the deadline for public comments until October 3, 2025. 90 FR 39333 (Aug. 15, 2025); 90 FR 40975 (Aug. 22, 2025). This final rule falls under the actions specified in CAA section 307(d)(1)(C) and is therefore subject to the requirements of CAA section 307(d). For a full explanation of how the EPA complied with CAA section 307(d), see the separate Response to Comments document in the docket for this final rule.

[5] 90 FR 35969–70.

[6] *Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review,* 89 FR 16820 (Mar. 8, 2024).

[7] The petitions for reconsideration that are relevant to this action can be found in the rulemaking docket for this action (Docket ID No. EPA–HQ–OAR–2025–0162).

purposes of the CAA to provide regulated entities sufficient time to comply with the requirements of the 2024 final rule. Accordingly, in the 2025 IFR, the EPA took the following actions with regard to deadlines in the 2024 final rule:

- Extended the deadline to November 28, 2025, for continuous monitoring of the vent gas net heating value of flares and enclosed combustion control devices.
- Extended the deadline to January 22, 2027, to meet certain requirements related to control devices, equipment leaks, storage vessels, process controllers, and covers/closed vent systems.
- Extended the deadline to January 22, 2027, for States to submit to the EPA plans to address existing oil and natural gas sources pursuant to the 2024 Emission Guidelines (EG).
- Delayed the deadline for future implementation of the SEP program to January 22, 2027, and similarly extended the timing for the EPA to act on requests for approval of methane detection technology for use in the SEP.

As explained in the 2025 IFR, the EPA found that prior notice and comment was impracticable given the applicable compliance deadlines and the timeline involved in completing such procedures.[8] In the 2025 IFR, the EPA made timely, targeted changes to certain compliance and implementation dates that had created unintended compliance difficulties for regulated entities. Through ongoing communications with stakeholders and review of relevant regulatory language, the EPA determined that there were legitimate barriers to compliance and/or questions as to whether certain regulatory provisions were practically and logistically achievable as promulgated in the timeframes allowed by the 2024 final rule. The targeted changes in the 2025 IFR provided the immediate relief needed to avoid unnecessary and problematic situations of owners and operators expending time and resources attempting to comply in short amounts of time with particular regulatory provisions. Notice and comment prior to the regulatory changes would have been impracticable given the purpose of these targeted amendments, which was to immediately provide the time required to address the issues identified in the 2025 IFR, and the limited time in which the Agency had to address the issues identified through ongoing review and stakeholder engagement on the at-issue provisions.[9]

[8] 90 FR 35979–80.

[9] *Id.*

Based on information received in petitions for reconsideration and other information discussed in the 2025 IFR, and after considering public comments on the 2025 IFR, the EPA reaffirms in this final action that the targeted revisions to compliance deadlines set forth in the 2025 IFR and summarized below are necessary, appropriate, and consistent with the purposes of the 2024 final rule and the CAA.

Each conclusion and re-affirmation of the relative 2025 IFR change included in this final rule is severable from the other, and each new regulatory change in this final rule is severable from the other regulatory changes in this final rule and from the conclusions and re-affirmations of the changes in the 2025 IFR. First, each of the deadlines amended in the 2025 IFR action is functionally independent from the others—*i.e.,* may operate in practice independently of the other requirements being amended, such that the amendment of a deadline in one set of requirements does not depend on the amendment of a deadline in any other set of requirements. For example, amendments to individual compliance deadlines in NSPS OOOOb function separately from amendments to the State plan submittal deadline in EG OOOOc. Similarly, amendments to the implementation deadline for the SEP and amendments to timing for EPA action on methane detection technology for use in the SEP function separately from amendments to individual compliance deadlines to other aspects of the 2024 final rule. For similar reasons, each of the decisions to reaffirm changes in the 2025 IFR is independent from each of the other decisions to reaffirm, as well as from each of the regulatory changes made in this final rule.

After issuing the July 31, 2025 IFR, the EPA solicited comments until October 3, 2025, and held a public hearing on September 2, 2025. We received comments from regulated industry, environmental groups, State environmental agencies, community groups, Tribes, and others during the comment period. While certain comments are briefly discussed in this preamble, a summary of all public comments received on the 2025 IFR, and the EPA's responses to those comments, is available in the document, ''Oil and Natural Gas Sector Climate Review: Extension of Deadlines in Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Response to Public Comments on the July 31, 2025 Interim Final Rule'' (''Response to Public Comments document''), which is available in the rulemaking docket.[10]

In this final action, the EPA is reaffirming our decisions and revisions in the 2025 IFR that address the Crude Oil and Natural Gas NSPS and EG, is making a change to the compliance deadline for NHV monitoring, and is also providing additional time for the submission of initial annual reports. Specifically, the EPA is providing an additional 180 days from the effective date of this final rule for sources to comply with the NHV monitoring requirements and providing 360 days from the effective date of this final action for owners or operators to submit annual reports. The EPA is taking this final action after consideration of all the comments received by the close of the comment period on October 3, 2025, and is not considering comments received after this date. This final action does not reopen the substance of the 2024 final rule or address the substantive amendments requested in various petitions for reconsideration.[11] In the 2025 IFR, the EPA requested comments only on compliance deadline issues, which was the subject of that rule. Other than the deregulatory impacts of the two additional extensions, the EPA is reaffirming the analysis of the 2025 IFR and asserting that this final rule is anticipated to have minimal economic impacts relative to those of the 2025 IFR. However, because of the substantive comments provided on the 2025 IFR, the EPA has provided a memorandum titled ''Affirmation of Economic Impact Analysis for the Interim Final Rule'' that is available in the docket that reaffirms the analysis conducted to support the 2025 IFR.[12]

[10] *See* ''Oil and Natural Gas Sector Climate Review: Extension of Deadlines in Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Response to Public Comments on the July 31, 2025 Interim Final Rule,'' Docket ID No. EPA–HQ–OAR–2025–0162.

[11] On January 15, 2025, the EPA proposed (in a rulemaking action separate from the 2025 IFR) amendments to NSPS OOOOb and EG OOOOc in response to petitions for reconsideration. The January 2025 proposal includes discrete technical changes to two aspects of the 2024 final rule. The two issues addressed in the January 2025 proposal are temporary flaring provisions for associated gas in certain situations and vent gas NHV continuous monitoring requirements and alternative performance test (sampling demonstration) option for flares and ECDs. *See* 90 FR 35970 (citing 90 FR 3734 (Jan. 15, 2025)). The EPA continues to work on a final rule stemming from that January 2025 proposal.

**III. What amendments did the EPA make in the 2025 interim final rule for the Crude Oil and Natural Gas NSPS and EG, and what are our final conclusions in this final rule?**

The 2025 IFR extended certain compliance deadlines and timeframes for implementation of the 2024 final rule. This section describes the amendments made in the 2025 IFR and our final conclusions for each topic. We received numerous public comments on the 2025 IFR, and our responses to those comments are in the response to comment document available in the docket for this final rule. Owners and operators, industry groups, certain States, and others provided comments supporting the extensions provided in the 2025 IFR. These commenters stated that the extensions included in the 2025 IFR provided much needed relief to sources forced to comply with provisions that were unworkable on the timeline in the 2024 final rule. Some regulated industry commenters emphasized the need for collaboration amongst policy makers and industry partners to find solutions that will meaningfully drive down emissions, while allowing U.S. independent producers to meet the global demand for affordable and reliable crude oil and natural gas.[13] The EPA agrees with commenters stating ''[t]he goal is a successful and safe implementation of the Final Rule that protects both the environment and critical energy infrastructure.''[14] Some commenters asserted that ''[a]ny loss of production not only jeopardizes the economic security of thousands of [state citizens] but also threatens the nation's energy security.''[15] Some commenters stated ''that harnessing our nation's abundant energy resources is essential for energy security and will pay tremendous economic and geopolitical dividends.''[16] One commenter stated that the extensions avoid ''the untenable conflict of operators having to decide between risking non-compliance, or shut-in of operations'' and applauded the EPA ''for taking action consistent with Executive Order 14192 (Unleashing Prosperity through Deregulation) and Executive Order 14154 (Unleashing American Energy).''[17] These commenters also supported the EPA's decision to issue the extensions via an IFR.

Environmental groups, certain States, and others submitted comments opposing the 2025 IFR. Some commenters in opposition to the 2025 IFR extensions contested the EPA's use of an IFR in the first instance, with some claiming that ''[t]he good cause exception [of the Administrative Procedure Act] does not apply in these circumstances.''[18] Other commenters criticized the asserted emissions impacts of the 2025 IFR (claiming that the forgone emissions benefits resulting from the extensions are extensive and that the EPA's reasons provided for the extensions do not justify these forgone benefits).[19] Commenters also asserted that the deadlines in the 2024 final rule were based on careful balancing of technical feasibility, cost, and public health benefits, and that the EPA's ''purported concerns'' expressed in the 2025 IFR ''are belied by the record and contradict EPA's own rationale for the 2024 Methane Standards.''[20] Commenters also expressed concern about the impacts on communities of delayed implementation of the 2024 final rule deadlines.[21]

For the reasons stated in the 2025 IFR, the response to comment document in the docket for this action, and this preamble, we are reaffirming the extensions provided in the 2025 IFR and extending the NHV monitoring provisions by an additional 180 days from the effective date of this final rule. After reviewing and considering all adverse comments submitted in response to the 2025 IFR, the EPA finds that the extensions are still warranted. The EPA did not receive sufficient information to show that a different course of action would be appropriate, aside from the two additional changes that the EPA is making in this final rule related to NHV and the compliance reporting deadline. Further, the EPA's use of an IFR is no longer an issue because the Agency solicited public comment, held a public hearing, considered all comments, and respond to all substantive in-scope comments. The EPA is also providing additional time for the submission of initial annual reports, based on comments received. Specifically, the EPA is providing 360 days from the effective date of this final action for owners or operators to submit annual reports.

*A. Revised NSPS OOOOb for Control Devices*

In the 2025 IFR, the EPA extended the compliance dates related to NHV monitoring of flares and enclosed combustion device(s) (ECD) found in 40 CFR 60.5417b(d)(8)(i) through (iv) and (vi) by 120 days from publication of the 2025 IFR (until November 28, 2025) to address the supply chain, personnel, and laboratory limitations identified by stakeholders, which we reasonably determined made compliance with the requirements in the 2024 final rule infeasible. As explained below, in light of public comments received, the Agency is providing an additional 180 days from the effective date of this final rule for sources to comply with the NHV monitoring requirements in the 2024 final rule. The new compliance date for these NHV monitoring provisions will be June 1, 2026.

The EPA sought comment on the 120-day extension in the IFR and indicated that the Agency may make ''additional adjustment to the compliance timeline for the NHV requirements'' if needed.[22] We received multiple comments contending that the EPA should further extend the 2025 IFR extension for NHV monitoring of flares and ECDs.[23] Commenters identified continued supply chain barriers, logistical feasibility challenges related to necessary staffing needs, and the ongoing demand for monitoring equipment and sampling vendors as reasons for the continuing challenges with achieving compliance within the timeframe set in the IFR.[24] One commenter estimates it will take, at a minimum, an additional six months to complete all NHV testing due to the need to continue purchasing additional chromatograph equipment, build out additional trailers to house the equipment that can travel to individual sites, monitor sites for the 14-day required period, and dedicate the necessary staff to overseeing that the testing, equipment, and transportation is successfully completed.[25] Another commenter stated that by extending the compliance date by only 120 days from the date of the 2025 IFR publication, there was still not sufficient time for covered sources to avoid the various compliance-related challenges, such as the ongoing supply chain issues that commenters do not expect to be resolved in the near term.[26]

The EPA carefully considered these comments and agrees that additional

[13] EPA–HQ–OAR–2025–0162–0047.

[14] EPA–HQ–OAR–2025–0162–0184.

[15] EPA–HQ–OAR–2025–0162–0172.

[16] EPA–HQ–OAR–2025–0162–0065.

[17] EPA–HQ–OAR–2025–0162–0078.

[18] EPA–HQ–OAR–2025–0162–0081.

[19] EPA–HQ–OAR–2025–0162–0045.

[20] EPA–HQ–OAR–2025–0162–0178.

[21] EPA–HQ–OAR–2025–0162–0186.

[22] 90 FR 35971–72.

[23] EPA–HQ–OAR–2025–0162–0164, EPA–HQ–OAR–2025–0162–0162, EPA–HQ–OAR–2025–0162–0168, EPA–HQ–OAR–2025–0162–0154, EPA–HQ–OAR–2025–0162–0027.

[24] EPA–HQ–OAR–2025–0162–0078, EPA–HQ–OAR–2025–0162–0124, EPA–HQ–OAR–2025–0162–0164.

[25] EPA–HQ–OAR–2025–0162–0164.

[26] EPA–HQ–OAR–2025–0162–0170.

time is warranted for the covered sources to comply with the NHV monitoring provisions in the 2024 final rule. The same logistical and practical challenges that merited the 120-day extension in the IFR are ongoing and unlikely to be resolved soon, and therefore present a compelling need for additional time to comply. Accordingly, we are finalizing an additional extension of 180 days from the effective date of this final action to provide additional relief for the NHV monitoring compliance deadline so that owners and operators have necessary time to resolve these logistical and practical challenges. Although some commenters requested longer extensions, we believe that an additional extension of 180 days is appropriate. Based on experience implementing this NSPS and similar regulatory provisions, we believe that an additional 180-day relief period should be sufficient to resolve the supply chain and logistical issues identified by the commenter, and is also consistent with the standard 180 day time frame provided in the NSPS General Provisions to demonstrate compliance with a given testing or monitoring requirement once a rule is promulgated. The availability of necessary equipment and personnel is subject to fluctuation, but this window of time builds in an adequate opportunity for individual sources to resolve compliance challenges without a one-time rush to the market that depletes available resources. Additionally, we note that owner and operators can bring ongoing challenges to the Agency's attention should this predictive judgment prove unfounded. For example, owner and operators may request reconsideration of this final rule or otherwise engage with the Agency in advance to address continued or emerging issues. The EPA also received comments opposing the extension that claimed the EPA has provided no data to support the need for delay, has ignored its own longstanding requirements and recent rulemaking opportunities, and has left a core emissions control obligation unenforceable. The EPA disagrees with these comments. Performance testing provisions for ECDs were untenable for NSPS OOOOb control devices under the deadlines in the 2024 final rule because of the volume of ECDs that require testing, the potential number of sampling location retrofits that may need to be performed, as well as the limited number of specialized source testing firms available to perform these tests. The information and explanations supporting these extensions are included in the docket for this action.

Additionally, in the 2025 IFR, the EPA extended the requirement to conduct total organic compound (TOC) performance tests on ECDs in 40 CFR 60.5413b(b) until January 22, 2027, to provide affected facilities sufficient lead time to retrofit sources and to plan and execute the performance tests required by the 2024 final rule. The EPA notes that even though the Agency extended the deadline to complete the prescribed NHV monitoring and TOC performance testing on these source types, the visible emission (VE) observation requirements of 40 CFR 60.5417b(d)(8)(v) continue to apply for sources to demonstrate compliance with the applicable emission standards by the 2024 final rule's effective date of May 7, 2024, or 180 days after startup, whichever is later, as required in 40 CFR 60.5370b(a)(9)(ii). We received comments in support of the extension for ECDs to address credible concerns that testing devices at the vast number of source subject to the rule was not achievable on the timeline laid out in the 2024 final rule. These comments and others on the ECD testing extension can be found in the Response to Comment document, available in the docket for this action. For the reasons discussed in the 2025 IFR and after considering the public comments on those extensions, we reaffirm that the changes to the ECD provisions related to control devices in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions. For further discussion of this topic, please see Chapter 9 of the Response to Public Comments document, which is available in the docket for this action.

*B. Revised NSPS OOOOb for Covers and Closed Vent Systems*

In the 2025 IFR, the EPA extended the compliance date for the ''no identifiable emissions'' (NIE) inspection requirements until January 22, 2027. Based on information received since promulgation of the 2024 final rule, and as stated in the 2025 IFR, we have serious concerns regarding the ability of owners and operators to meet the NIE inspection requirements on the compliance schedule in the 2024 final rule. Commenters in support of the NIE inspection extension credibly asserted that leaks are inevitable due to the inherent normal wear and tear of the equipment and the system over time (*e.g.,* bolts rusting). Commenters in opposition to the extension criticized the potential emissions impacts of extending the compliance date. We disagree with the commenters that the extension will adversely impact emissions, as described below. After considering public comments on the issue, in this final rule we reaffirm our finding that it was necessary, appropriate, and in the public interest to extend the compliance deadline in the 2024 final rule given credible workability concerns. The deadline extension is reasonable, within the EPA's considerable discretion under CAA section 111, and reasonably timed to address the compliance issues identified since promulgation of the 2024 final rule.

Compliance requirements that are consistent with the substantive requirements and goals of the 2024 final rule continue to apply to affected facilities that would otherwise be subject to NIE requirements. Thus, owners and operators still must design and install a closed vent system (CVS), perform initial and ongoing inspections to ensure that the system has no leaks, and repair any leaks that are found within 30 days as required by the 2024 final rule. The only relevant compliance dates that the 2025 IFR modified, and that EPA is now reaffirming, are to conduct inspections that confirm that systems operate with NIE. We continue to believe that these requirements, which remain in place and are not being extended, achieve the emission-reduction goals of the 2024 final rule imposed pursuant to CAA section 111. The EPA did not attribute any forgone benefits to the deadline extension for covers and closed vent systems. The inspection requirement is a compliance assurance mechanism that, for the reasons identified in the 2025 IFR and in this final rule, cannot reasonably be achieved across this source category by the original deadline set in the 2024 final rule. For further discussion of this topic, please see Chapter 10 of the Response to Public Comments document, which is available in the docket for this action.

For the reasons discussed in the 2025 IFR and after considering the public comments on those extensions, we reaffirm that the changes to provisions related to covers and closed vent systems in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions.

*C. Revised NSPS OOOOb for Equipment Leaks*

As explained in the 2025 IFR, the regulatory language in 40 CFR 60.5400b(h)(2)(ii)(A) appears to require a source to repack an existing valve with low-emissions (low-E) packing. The language in that provision is unclear as to whether a source must also comply with paragraph (B) or (C), which require

that a source either replace the valve with a low-E valve or perform a drill and tap repair with a low-E injectable packing, respectively. The EPA did not intend in the 2024 final rule to require that a source repack an existing valve and then also replace that same valve during the same repair.

In addition, as we stated in the 2025 IFR, based on information received since promulgation of the 2024 final rule, the EPA determined that concerns about compliance with the 2024 final rule were credible and merited extensions of certain deadlines for equipment leaks. Specifically, the EPA found in the 2025 IFR that requiring replacement of leaking valves with low-E valves without first providing an opportunity for an attempt at repair of the existing valve is technically and economically infeasible and creates confusion. We also found assertions that the necessary equipment (low-E valves and packing) are not commercially available to be credible. In the 2025 IFR, the EPA extended the compliance date for equipment leak repair requirements in 40 CFR 60.5400b(h)(2)(ii) and 60.5401b(i)(2)(ii) until January 22, 2027, or 180 days after startup of the affected source, whichever is later.

Many commenters supported the extension for low-E valves and cited the difficulty in obtaining the necessary equipment on the timeline in the 2024 final rule. Commenters also agreed with the EPA's assessment that the regulatory text is confusing as written and appears to require sources to repair and replace equipment rather than repairing the equipment with replacement coming after repair is attempted. While some other commenters appeared to take issue with this extension, the adverse comments were vague and sometimes discuss issues unrelated to the specific extension in the 2025 IFR. For example, one commenter stated that the 2024 final rule built in repair-based options before mandating replacement, leak detection and repair has been standard practice for decades and is cost efficient, and that delays will not expand supply—they only postpone operator accountability. The EPA does not dispute the general idea that leak detection and repair programs have generally been in various federal regulations for some time, but this general idea is unrelated to the specific extensions in the 2025 IFR. The EPA points out that this extension is specifically for *each valve where a leak is detected.* The repair requirement for leaking valves requires either the existing valve be repacked with low-e packing, or replaced with a low-e valve, or perform a drill and tap repair with a low-e injectable packing. The 2025 IFR provided affected sources additional time to undertake planning to obtain needed low-e equipment given the cost and widespread need for such equipment. For further discussion of this topic, please see Chapter 11 of the Response to Public Comments document, which is available in the docket for this action. For the reasons discussed in the 2025 IFR and after considering the public comments on those extensions, we reaffirm that the changes to provisions related to equipment leaks in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions.

### *D. Revised NSPS OOOOb for Process Controllers*

In the 2025 IFR, the EPA extended the second phase of the phased-in compliance deadline for the zero emission standards applicable to process controllers to January 22, 2027, to address the supply chain and logistical issues raised by petitioners. The EPA determined in the 2025 IFR that affected sources need additional compliance time to ensure that they can source, obtain, and install sufficient equipment. In the meantime, consistent with the substantive provisions and goals of the 2024 final rule, the final phase-one standard continues to apply to process controller affected facilities (*i.e.,* the same standard applicable to sites in Alaska without access to electricity).

Commenters in support of this extension asserted that the time provided by the 2025 IFR is needed to allow sources to obtain and install necessary equipment. Some commenters noted that ''if an operator is unable to complete the conversion [to zero emission controllers] due to reasons beyond its control, it will have to make a decision whether to continue operating but potentially in a non-compliant state or shut down that compressor station thereby reducing its ability to move gas during peak demand periods.'' [27] Commenters in opposition of this requirement note the potential for emissions increases that will result from delayed compliance. However, as the EPA explained in the 2025 IFR, ''[i]n the meantime, consistent with the substantive provisions and goals of the 2024 final rule, the interim standard continues to apply to process controller affected facilities (*i.e.,* the same standard applicable to sites in Alaska without access to electricity).'' [28] ''All new, reconstructed, and modified sources subject to NSPS OOOOb must comply with the interim standard, which achieves emission reductions even compared to the pre-NSPS OOOOb baseline (*i.e.,* NSPS OOOOa) due to the intermittent vent controller inspection requirement, until the deadline for the second phase of the standard.'' For further discussion of this topic, please see Chapter 12 of the Response to Public Comments document, which is available in the docket for this action. For the reasons discussed in the 2025 IFR and after considering the public comments on those extensions, we reaffirm that the changes to provisions related to process controllers in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions.

### *E. Revised NSPS OOOOb for Storage Vessels*

In the 2025 IFR, the EPA extended the date for the specific provisions required for a limit to be considered legally and practicably enforceable (LPE) in 40 CFR 60.5365b(e)(2)(i)(A)–(F) until January 22, 2027, in order to ensure sufficient time for sources to work with delegated authorities to establish limits that are LPE. Additionally, the EPA extended the date upon which the throughput-based ''modification'' triggers become effective until January 22, 2027, in order to provide time for the likely large number of sources that would trigger those provisions to make needed adjustments to facility planning, equipment procurement, and process changes to comply with the requirements. Finally, the EPA extended the date by which sources must calculate potential emissions using the 30-day period of production until January 22, 2027, in order to allow facilities time to obtain additional information and make the requisite decisions related to their facilities subject to these requirements. We noted in the 2025 IFR that until the provisions that we extended become effective, provisions remain in place that establish what other activities constitute a modification (*i.e.,* sources that add an additional vessel or replace a vessel with one that has increased capacity still trigger modification). Sources are still required under the 2024 final rule to determine the potential emissions from storage vessels. The only change made to these provisions in the 2025 IFR is that, in the interim period, sources need not use the confusing 30-day period of production calculation.

[27] EPA–HQ–OAR–2025–0162–0184; *see also* EPA–HQ–OAR–2025–0162–0078 (comment making similar claim).

[28] 90 FR 35974.

Sources may establish limits on emissions that are considered LPE with or without the specific criteria included in the 2024 final rule. Any sources that trigger modification provisions will still be subject to the standards in the 2024 final rule.

Commenters that supported this extension noted the time required for States and sources to adjust to the triggers for modification. These commenters supporting the 2025 IFR extensions stated that the additional time is needed to accommodate the volume of modifications that are likely to result from the 2024 final rule. The EPA also received comments arguing against the extensions which claimed that the record demonstrates that we carefully considered and rejected arguments from reconsideration petitioners in the 2024 final rule, enforceable limits must include monitoring and reporting, that only throughput increases causing emissions above thresholds count as modifications, and that a uniform 30-day PTE calculation was necessary for consistency. This commenter claims the 2025 IFR embraces the very positions the EPA previously found unworkable and does so without citing new evidence. The EPA disagrees with this commenter's assertions. First, extending the timeline for a limit to be considered LPE will ensure there is enough time for sources to work with delegated authorities to establish limits that are LPE without foreclosing the use of LPE limits already established. Second, extending the timeline for the throughput-based modification triggers provides time for the potentially large number of sources that would trigger those provisions to make any needed adjustments to facility planning, equipment procurement, and process changes needed to comply with the requirements. Finally, extending the date by which sources must calculate potential emissions allows facilities to obtain additional information and make the requisite decisions related to their facilities. For further discussion of this topic, please see Chapter 15 of the Response to Public Comments document, which is available in the docket for this action. For the reasons discussed in the 2025 IFR and after considering the public comments on those extensions, we reaffirm that the changes to provisions related to storage vessels in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions.

### *F. Revised NSPS OOOOb for Super Emitter Program*

In the 2025 IFR, the EPA extended the date for future implementation of the SEP until January 22, 2027. This extension also impacts the timing for EPA action concerning methane detection technology for use in the SEP under 40 CFR 60.5398b(d)(1)(iii). Because the EPA extended the date for future implementation of the SEP, there is no need for the EPA to act on submissions seeking approval of remote-detection technology for use in the program in the intervening period. Therefore, the EPA extended these provisions, which include conditional approval of alternative test methods for methane detection technology for use in the SEP if the EPA does not act on submissions, to January 22, 2027.

Public commenters provided input on this aspect of the 2025 IFR, which are discussed in the Response to Public Comments document, which is available in the docket for this action.[29] Many industry commenters supported the extension, and some cited the EPA's reasoning offered in the 2025 IFR: that EPA has experienced unanticipated difficulties and concerns that require additional time for effective and lawful administration of various program procedures. Other commenters did not support the extension and instead claimed that delay will lead to significant pollution than would have otherwise occurred, and that the program would have provided helpful information about large methane leaks for Tribes to appropriately respond to and report these events. Another commenter alleged that the EPA failed to provide data or analysis demonstrating that the SEP is unworkable, failed to reconcile its new position with the findings of the 2024 final rule, and relied on speculation and isolated incidents that cannot support such a sweeping change in course. The EPA disagrees with some of these commenters and concludes that none of them raise objections that would warrant additional changes to the changes made in the 2025 IFR. First, the EPA is unable to quantify the impact of the extensions related to the Super Emitter Program due to lack of data regarding the emissions events. Second, the EPA disagrees with the commenter's assertion that it was required to reconcile its reasons for the 2025 IFR with the conclusions supporting the 2024 final rule and that it has not provided a reasoned basis for the extensions in the record. The extensions in the IFR related to the SEP are informed by the evolution of the EPA's thinking after it began to implement the Program, and thus reflect consideration of the EPA's additional experience, which was not captured in the record for the 2024 final rule. The extension is based on unanticipated difficulties and concerns that the EPA experienced in implementing this novel program. Lastly, we further note that, while the SEP established a new mechanism for EPA-certified third parties to voluntarily submit certain information about particular types of emissions events to the EPA, any person can voluntarily provide information about any emission event to the EPA at any time, and the SEP did not change that. For further discussion of this topic, please see Chapter 13 of the Response to Public Comments document, which is available in the docket for this action. For the reasons discussed in the 2025 IFR and after considering the public comments on those extensions, we reaffirm that the changes to provisions related to the SEP in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions.

[29] EPA–HQ–OAR–2025–0162.

### *G. Revised NSPS OOOOb for Flare Pilot Flame and Alarm Requirements*

In the 2025 IFR, we extended the date to January 22, 2027, by which owners and operators who utilize these flares (*e.g.,* unassisted, pressure-assisted, steam-assisted) and enclosed combustion devices must: (1) ensure that flares and ECDs operate with a continuous pilot flame, and (2) install and operate a system to send an alarm to the nearest control room when a pilot flame is unlit.

This extension does not affect the emission reduction requirements for flares and ECDs and other monitoring of such devices described in section II.B.VII of the preamble to the 2025 IFR.

Commenters in support of this extension cited the geographically remote locations of many sources and the need for time to ensure the necessary equipment can be installed. One commenter in opposition to the extension stated that while the EPA cites issues providing supplemental fuel and challenges in obtaining and installing communications equipment as reasons for delay, these protections are already in use in many states, and that the extension increases the risk of methane venting directly into the atmosphere instead of being properly combusted. In response, the EPA notes that for sources in those states that already require continuous pilot flames and alarms, those State requirements will still apply regardless of the

applicable date(s) specified in NSPS OOOOb. For further discussion of this topic, please see Chapter 14 of the Response to Public Comments document, which is available in the docket for this action. For the reasons discussed in the 2025 IFR and after considering the public comments on those extensions, we reaffirm that the changes to provisions related to the flare pilot flame and alarm requirements in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions.

*H. Revised EG OOOOc for State Plan Submittal Deadlines*

In the 2025 IFR, for the reasons discussed in section II.C.I of the preamble to that rule, we extended the deadline for State plan submittal until January 22, 2027.

Commenters in support of the State plan submittal deadline extension cited the large number of sources covered by the 2024 final rule and the need for additional time to allow States to respond to the numerous regulatory requirements for thousands of sources subject to the rule. Commenters opposing the extension claimed the 2025 IFR relied on reasoning already considered during the adoption of the 24-months timeline rather than raising new or unforeseen challenges, failed to adequately address the environmental and public health effects of the deadline extension, and that the extension justification is contradicted by on the ground evidence of State progress. The EPA disagrees with these comments because we have determined, through ongoing and recent communications with stakeholders and review of the relevant regulatory language, that certain discrete provisions in the final rule present immediate problems related to compliance. For further discussion of this topic, please see Chapter 8 of the Response to Public Comments document, which is available in the docket for this action. For the reasons discussed in the 2025 IFR, and after considering the public comments on those extensions, we reaffirm that the changes to provisions related to the State plan submittals in the 2025 IFR are warranted, and we conclude that no additional changes are needed to those provisions.

*I. Additional Time for NSPS OOOOb Initial Annual Report*

Based on comments received, the EPA now also understands that there is significant confusion with respect to the initial annual report deadline in the 2024 final rule. After carefully considering these comments, we are also providing additional time for the submission of the first round of initial annual reports and the first associated subsequent annual report (the second report). Specifically, under the final 2024 rule, if the first initial annual report was required to be submitted by August 2025, then the first subsequent annual report (the second report) was required to be submitted by August 2026. This action changes those dates, and the submittal deadline for other reports, by finalizing that no annual report is due before November 30, 2026. In other words, owners and operators have until November 30, 2026 to submit all reports that were originally due prior to this deadline. All subsequent annual reports due thereafter (due after November 30, 2026 are due no later than 90 days after the end of each annual compliance period. These changes do not alter any provisions specifying the annual compliance period.

Several commenters indicated general confusion regarding their reporting obligations and requested additional time to prepare their first round of initial annual reports that were originally required to be submitted by August 2025.[30] The EPA received over 400 letters identifying confusion and requesting extensions for the first round of initial reports.[31] In attempts to provide clarification, the EPA did address a related issue on its website. [32] As explained on the website, the July 2025 IFR extended several compliance deadlines from the 2024 final rule, however the 2025 IFR did not clearly address the impact on the annual compliance reports. As we explained on that web page, the reporting deadlines associated with these compliance deadlines were also extended as a practical matter.

The EPA acknowledges and agrees that there was confusion with respect to how the 2025 IFR impacted the annual compliance reports required by NSPS OOOOb, and confirms that confusion was not intended or desirable. The EPA recognizes that posting on this website may not have been sufficient to communicate the information to all owners and operators subject to the reporting obligation in NSPS OOOOb. The 2025 IFR impacts which data fields must be reported in the annual compliance report. The EPA acknowledges these changes to the reporting obligations were not clear in the 2025 IFR, and were not previously communicated clearly. Since, as explained in the EPA's website posting, ''[t]he reporting deadlines associated with these [IFR] compliance deadlines were also extended as a practical matter,'' owners and operators are not required to include certain information in their annual report (compared to the entire suite of reporting obligations finalized in the 2024 final rule).

Owners and operators need time to fully understand and implement this change to their reporting obligations for their annual reports under NSPS OOOOb. As such, the EPA is providing relief for additional time for the submission of annual reports. This additional time relief is needed to review and, if necessary, adjust reports to align with the EPA's clarification posted on its website. In other words, this time is needed to allow owners and operators time to remove certain information from their annual report; specifically, the data related to any relevant requirement(s) impacted by the IFR extensions. Further, the EPA's regional offices have already granted many reporting deadline extension requests for similar reasons in accordance with authority in 40 CFR 60.19. Providing the extension for all owners and operators subject to NSPS OOOOb is a more efficient and equitable approach than dealing with this issue on a one-off submission basis.

Several commenters requested, on this basis, that the initial reporting deadline be extended by 540 days. Although the EPA agrees that an extension is necessary, we do not agree that such a length of extension is appropriate based on the confusion referenced above and the deadline changes made in the 2025 IFR or this final rule. Rather, given the relevant timelines for the initial reporting requirements, we believe that relief for approximately one year from the effective date of this action is adequate

[30] EPA–HQ–OAR–2025–0162–0029, EPA–HQ–OAR–2025–0162–0035, EPA–HQ–OAR–2025–0162–0031, EPA–HQ–OAR–2025–0162–0036, EPA–HQ–OAR–2025–0162–0037, EPA–HQ–OAR–2025–0162–0041, EPA–HQ–OAR–2025–0162–0048, EPA–HQ–OAR–2025–0162–0060, EPA–HQ–OAR–2025–0162–0061, EPA–HQ–OAR–2025–0162–0059, EPA–HQ–OAR–2025–0162–0055, EPA–HQ–OAR–2025–0162–0064, EPA–HQ–OAR–2025–0162–0168, EPA–HQ–OAR–2025–0162–0162, EPA–HQ–OAR–2025–0162–0191, EPA–HQ–OAR–2025–0162–0130, EPA–HQ–OAR–2025–0162–0095, EPA–HQ–OAR–2025–0162–0078, EPA–HQ–OAR–2025–0162–0162, EPA–HQ–OAR–2025–0162–0172, EPA–HQ–OAR–2025–0162–0078, EPA–HQ–OAR–2025–0162–0168, EPA–HQ–OAR–2025–0162–0154, EPA–HQ–OAR–2025–0162–0195, EPA–HQ–OAR–2025–0162–0170, EPA–HQ–OAR–2025–0162–0172, EPA–HQ–OAR–2025–0162–0168, EPA–HQ–OAR–2025–0162–0162, EPA–HQ–OAR–2025–0162–0449, EPA–HQ–OAR–2025–0162–0170, EPA–HQ–OAR–2025–0162–0190, EPA–HQ–OAR–2025–0162–0130.

[31] Please see the docket for a sampling of these letters.

[32] See under the header ''Frequently Asked Questions'' at *https://www.epa.gov/controlling-air-pollution-oil-and-natural-gas-operations/2025-interim-final-rule-extend-compliance.*

for sources to resolve any confusion and adjust their reporting on an annual cycle. For further discussion of this topic, please see Chapter 16 of the Response to Public Comments document, which is available in the docket for this action.

The EPA believes this additional time will provide the necessary relief for owners and operators to get the clarification and certainty they need, notably to those owners and operators whose first initial annual report was required to be submitted by August 2025. This additional time finalizes that no annual report is due before November 30, 2026.

## IV. Statutory and Executive Order Reviews

Additional information about these statutes and Executive Orders can be found at *https://www.epa.gov/laws-regulations/laws-and-executive-orders.*

### *A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review*

This action is a significant regulatory action as defined under section 3(f)(4) of Executive Order (E.O.) 12866. Accordingly, it was submitted to the Office of Management and Budget (OMB) for review. Any changes made in response to E.O. 12866 review have been documented in the docket.

This final rule reaffirms the conclusions reached in the IFR, with the exception of an additional extension of 180 days from the effective date of this final action to the compliance deadlines related to net heating value (NHV) monitoring and the provision of an additional 360 days from the effective date of this final rule for the submission of annual reports. For this final rule, the EPA prepared a memorandum titled ''Affirmation of Economic Impact Analysis for the Interim Final Rule'' that is available in the docket.[33]

### *B. Executive Order 14192: Unleashing Prosperity Through Deregulation*

This action is an Executive Order 14192 deregulatory action.

### *C. Paperwork Reduction Act (PRA)*

This action does not impose any new information collection burden under the PRA. On June 28, 2024, OMB approved the information collection activities for NSPS OOOOb and EG OOOOc under the PRA and assigned OMB Control No. 2060–0721.[34] OMB assigned the EPA ICR number 2523.07 to the ICR document that the EPA prepared. You can find a copy of the previously submitted ICR in EPA–HQ–OAR–2021–0317.

This action does not change the information collection requirements.

### *D. Regulatory Flexibility Act (RFA)*

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. This action will not impose any requirements on small entities. In this final rule, we are confirming the EPA's decision to extend certain compliance and implementation dates, after considering and responding to comments received on the 2025 IFR. This action provides an additional extension for NHV monitoring. The EPA is also providing additional time for the submission of initial annual reports. This action does not change any other regulatory requirements.

### *E. Unfunded Mandates Reform Act (UMRA)*

This action does not contain an unfunded mandate of $100 million or more as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. This action imposes no enforceable duty on any state, local or tribal governments or the private sector. In this action the EPA confirms its decision to extend certain compliance and implementation dates, after considering and responding to comments received on the 2025 IFR. This action provides an additional extension for NHV monitoring. The EPA is also providing additional time for the submission of initial annual reports. This action does not change any other regulatory requirements.

### *F. Executive Order 13132: Federalism*

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government. The 2025 IFR extended the deadline for State plan submittals, which will allow additional time for states to develop plans. However, neither the 2025 IFR nor this action alter the substantive requirements related to the content of State plans.

### *G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This action does not have tribal implications as specified in Executive Order 13175. This action responds to comments on the July 2025 IFR and provides an extension to regulatory requirements for NHV monitoring. The EPA is also providing additional time for the submission of initial annual reports. Thus, Executive Order 13175 does not apply to this action.

### *H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks*

Executive Order 13045 directs Federal agencies to include an evaluation of the health and safety effects of the planned regulation on children in Federal health and safety standards and explain why the regulation is preferable to potentially effective and reasonably feasible alternatives. This action is not subject to Executive Order 13045 because the EPA does not believe the environmental health or safety risks addressed by this action present a disproportionate risk to children.

### *I. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use*

This action is not a ''significant energy action'' because it is not likely to have a significant adverse effect on the supply, distribution or use of energy. In the Regulatory Impact Analysis (RIA) accompanying the 2024 final rule, the EPA used a set of supply and demand price elasticities to estimate the impacts of the rule on the United States energy system (see section 4.1.4 of that document). The EPA estimated maximum production reductions of about 41.4 million barrels of crude oil (1.05 percent of projected baseline production) and 272.5 million Mcf (thousand cubic feet) per year (0.75 percent). This final action provides an extension to regulatory requirements for NHV monitoring, provides additional time for the submission of initial annual reports, and confirms the EPA's decision to extend certain compliance and implementation dates, after considering and responding to public comments received on the 2025 IFR.

### *J. National Technology Transfer and Advancement Act (NTTAA)*

This action does not involve technical standards; therefore, the NTTAA does not apply.

### *K. Congressional Review Act (CRA)*

This action is subject to the CRA, and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

---

[33] EPA–HQ–OAR–2025–0162.

[34] *https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=202405-2060-001.*

**List of Subjects in 40 CFR Part 60**

Environmental protection, Administrative practices and procedure, Air pollution control, Intergovernmental relations, Reporting and recordkeeping requirements.

**Lee Zeldin,**

*Administrator.*

For the reasons stated in the preamble, the Environmental Protection Agency amends part 60 of title 40, chapter I, of the Code of Federal Regulations as follows:

## PART 60—STANDARDS OF PERFORMANCE FOR NEW STATIONARY SOURCES

■ 1. The authority citation for part 60 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

## Subpart OOOOb—Standards of Performance for Crude Oil and Natural Gas Facilities for Which Construction, Modification or Reconstruction Commenced After December 6, 2022

■ 2. Amend § 60.5370b by revising paragraphs (a)(9)(i) and (iii) to read as follows:

### § 60.5370b When must I comply with this subpart?

(a) * * *

(9) * * *

(i) Beginning June 1, 2026, or 180 days after startup, whichever is later, you must comply with the continuous monitoring systems requirements of § 60.5417b(d)(8)(i) through (iv).

* * * * *

(iii) Beginning June 1, 2026, or 180 days after startup, whichever is later, you must comply with the continuous monitoring systems requirements of § 60.5417b(d)(8)(vi) for enclosed combustion devices or flares that are air-assisted or steam-assisted.

* * * * *

■ 3. Amend § 60.5420b by revising paragraph (b) to read as follows:

### § 60.5420b What are my notification, reporting, and recordkeeping requirements?

* * * * *

(b) *Reporting requirements.* You must submit annual reports containing the information specified in paragraphs (b)(1) through (14) of this section following the procedure specified in paragraph (b)(15) of this section. You must submit performance test reports as specified in paragraph (b)(12) or (13) of this section, if applicable. Subject to the exception in the next sentence, the initial annual report is due no later than 90 days after the end of the initial compliance period as determined according to § 60.5410b; subsequent annual reports are due no later than the same date each year as the initial annual report. Notwithstanding the preceding sentence, no annual report is due before November 30, 2026, on or before which date you must submit all annual reports that were due before November 30, 2026 per the timing specified in the preceding sentence; then subsequent annual reports thereafter are due no later than 90 days after the end of each annual compliance period. If you own or operate more than one affected facility, you may submit one report for multiple affected facilities provided the report contains all of the information required as specified in paragraphs (b)(1) through (14) of this section. Annual reports may coincide with title V reports as long as all the required elements of the annual report are included. You may arrange with the Administrator a common schedule on which reports required by this part may be submitted as long as the schedule does not extend the reporting period. You must submit the information in paragraph (b)(1)(v) of this section, as applicable, for your well affected facility which undergoes a change of ownership during the reporting period, regardless of whether reporting under paragraphs (b)(2) through (4) of this section is required for the well affected facility.

* * * * *

[FR Doc. 2025–21788 Filed 12–2–25; 8:45 am]

BILLING CODE 6560–50–P

---

## ENVIRONMENTAL PROTECTION AGENCY

## 40 CFR Part 63

**[EPA–HQ–OAR–2002–0083; FRL–5919.4–04–OAR]**

## National Emission Standards for Hazardous Air Pollutants: Integrated Iron and Steel Manufacturing Facilities Technology Review

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The U.S. Environmental Protection Agency (EPA or Agency) is taking final action to respond to comments on an interim final rule (IFR) related to the National Emission Standards for Hazardous Air Pollutants (NESHAP) for Integrated Iron and Steel Manufacturing Facilities (''II&S NESHAP''). Specifically, the EPA is responding to comments on the IFR published in the **Federal Register** on July 3, 2025, that revised compliance deadlines for certain provisions related to planned bleeder valve openings, unplanned bleeder valve openings, blast furnace (BF) casthouses, basic oxygen process furnace (BOPF) shops, slag processing and handling, beaching, and fenceline monitoring. After carefully considering the comments, the EPA concludes that the amendments made in the IFR are warranted and is not making any further changes to the compliance deadlines revised in the IFR.

**DATES:** This final rule is effective on December 3, 2025.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2002–0083. All documents in the docket are available on the *https://www.regulations.gov* website. Although listed, some information is not publicly available, *e.g.,* Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. The EPA does not place certain other material, such as copyrighted material, on the internet; this material is publicly available only as pdf versions and accessible only on EPA computers in the docket office reading room. The public cannot download certain data bases and physical items from the docket but may request these items by contacting the docket office at (202) 566–1744. The docket office has 10 business days to respond to such requests. Except for such material, publicly available docket materials are available electronically in *https://www.regulations.gov* or on the EPA computers in the docket office reading room at the EPA Docket Center, WJC West Building, Room Number 3334, 1301 Constitution Ave. NW, Washington, DC. The Public Reading Room hours of operation are 8:30 a.m. to 4:30 p.m. Eastern Time (ET), Monday through Friday. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the EPA Docket Center is (202) 566–1742.

**FOR FURTHER INFORMATION CONTACT:** For information about this action, contact U.S. EPA, Attn: Katie Boaggio, Mail Drop: D243–02, 109 T.W. Alexander Drive, P.O. Box 12055, Research Triangle Park, North Carolina 27711; telephone number: (919) 541–2223; email address: *boaggio.katie@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

*Preamble acronyms and abbreviations.* Throughout this document the use of ''we,'' ''us,'' or ''our'' refers to the EPA. We use multiple acronyms and terms in this preamble. While this list may not be