**<u>ORAL ARGUMENT NOT YET SCHEDULED</u>**

**<u>IN THE UNITED STATES COURT OF APPEALS</u>**
**<u>FOR THE DISTRICT OF COLUMBIA CIRCUIT</u>**

No. 25-1275 (consolidated with Nos. 25-1164, 25-1168)

---

ENVIRONMENTAL DEFENSE FUND, *et al.,*
*Petitioners,*

v.

LEE ZELDIN, *et al.,*
*Respondents.*

---

Petition for Review of Final Action of the
United States Environmental Protection Agency

---

**MOTION FOR SUMMARY VACATUR OR, IN THE ALTERNATIVE, FOR**
**EXPEDITED BRIEFING AND ORAL ARGUMENT**

Grace M. Smith
Rosalie Winn
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7560
gsmith@edf.org
rwinn@edf.org

*Counsel for Environmental*
*Defense Fund*

Additional counsel are listed on the signature block.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................... ii

BACKGROUND ..............................................................................3

STANDING.....................................................................................9

ARGUMENT ................................................................................11

   I.   EPA's Final Delay Rule Clearly Violates Section 111, Warranting Summary Vacatur........................................................................................11

     A.   Section 111 and This Court's Precedents Required EPA to Consider Emissions Impacts from Delayed Compliance Obligations.............................12

     B.   EPA's Failure to Consider Emissions Impacts of the Final Delay Rule Violated Section 111 and the Requirements of Reasoned Decision-making ....13

   II.   If the Court does not Grant Summary Vacatur, It Should Order Expedited Review........................................................................................16

CONCLUSION ...............................................................................18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ..................20

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ............................................21

CERTIFICATE OF PARTIES ..........................................................................23

CERTIFICATE OF SERVICE ...........................................................................24

# TABLE OF AUTHORITIES

## CASES

*Air All. Houston v. EPA*, 906 F.3d 1049 (D.C. Cir. 2018).......................... 2, 12, 14

*Am. Lung Ass'n v. EPA*, 985 F.3d 914 (D.C. Cir. 2021).............. 2, 3, 12, 13, 15, 16

*Cascade Broad. Grp., Ltd. v. FCC,* 822 F.2d 1172 (D.C. Cir. 1987).................1, 12

*Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017) ...................................6, 12

*Ctr. for Biological Diversity v. NHTSA*, 538 F.3d 1172 (9th Cir. 2008) .................14

*Env't Def. Fund v. EPA*, 716 F.2d 915 (D.C. Cir. 1983)...........................................13

*Michigan v. EPA*, 576 U.S. 743 (2015) ...................................................................14

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29

(1983) ......................................................................................................3, 13

*Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375 (D.C. Cir. 1973) ................12

*Sierra Club v. Costl*e, 657 F.2d 298 (D.C. Cir. 1981).................................. 2, 3, 15

## STATUTES

*42 U.S.C. § 7411 ................................................................................................1

*42 U.S.C. § 7411(a)(1) ......................................................................................3

42 U.S.C. § 7411(b)(1)(A) ..................................................................................3

42 U.S.C. § 7411(b)(1)(B) ..................................................................................3

42 U.S.C. § 7411(d) ............................................................................................4

42 U.S.C. § 7607(d)(7)(B) ..................................................................................6

## RULES

89 Fed. Reg. 16820 (Mar. 8. 2024) ............................................................... 4, 5, 8

90 Fed. Reg. 35966 (July 31, 2025)...................................................................1, 6

90 Fed. Reg. 3734 (Jan. 15, 2025) ........................................................................5

90 Fed. Reg. 55671 (Dec. 3, 2025) ................................................. 1, 7, 8, 9, 15

Petitioners respectfully move for summary vacatur of the Environmental Protection Agency's ("EPA") final action postponing compliance obligations for reducing harmful air pollution from oil and gas industry operations. 90 Fed. Reg. 55671 (Dec. 3, 2025) ("Final Delay Rule" or "Final Rule"). The Final Delay Rule reaffirms and extends compliance delays EPA promulgated without prior notice in a 2025 Interim Final Rule, which Petitioners have challenged in Nos. 25-1164 and 25-1168.[1] By extending key compliance deadlines for up to nearly three years, the Final Delay Rule will substantially increase emissions of methane (a powerful cause of climate change) and volatile organic chemicals (that increase ozone smog and cancer risks), causing serious harms to public health.

The Final Delay Rule is so clearly unlawful that it warrants summary vacatur. *See Cascade Broad. Grp., Ltd. v. FCC,* 822 F.2d 1172, 1174 (D.C. Cir. 1987); *see also* D.C. Cir. Handbook of Practice and Internal Procedures 36 (rev. Dec. 4, 2025). EPA cited Section 111 of the Clean Air Act, 42 U.S.C. § 7411, as its only authority to delay compliance obligations. Commenters contended that

---

[1] The Interim Final Rule, 90 Fed. Reg. 35966 (July 31, 2025), is subject to a separate, fully briefed motion for summary vacatur (Doc. 2130555) ("IFR MSV") based upon that rule's distinct legal flaws. As Petitioners have explained, the issuance of the Final Delay Rule does not warrant delaying consideration of that motion. *See* Petitioners' Response to Status Report and Motion to Govern at 2, Doc. 2150239 (Dec. 12, 2025). The petitions having been consolidated, and the motion to summarily vacate the Interim Final Rule should be considered together with this motion.

Section 111 and this Court's precedents require EPA to consider the amount of emission reductions and the health and environmental impacts resulting from the compliance delays, and to weigh those harms against industry's feasibility and cost concerns. In the Final Delay Rule, EPA acknowledged that it did not in fact consider those harms or weigh them against industry concerns. EPA simply asserted that it was "not required to engage" with health and environmental harms when extending compliance dates. This one-sided approach contravenes both the plain language of Section 111, with its focus on "limitation" and "reduction" of "emissions," and this Court's precedents, which affirm that the statute requires EPA to "incorporate the amount of air pollution as a relevant factor to be weighed." *Sierra Club v. Costle*, 657 F.2d 298, 326 (D.C. Cir. 1981). This Court has repeatedly held EPA cannot ignore the health consequences of delaying Clean Air Act protections, *e.g.*, *Air All. Houston v. EPA*, 906 F.3d 1049, 1064–68 (D.C. Cir. 2018). And, in particular, this Court has held that, in proposing to delay implementation under Section 111, EPA *must* consider "the need for prompt reduction of … emissions," as well as "the added environmental and public health damage likely to result from slowing down" implementation of standards. *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 993 (D.C. Cir. 2021), *rev'd in part on other grounds sub nom. West Virginia v. EPA*, 597 U.S. 697 (2022). By declining to consider the health and environmental consequences of the delayed compliance

2

schedule, the agency has entirely "failed to consider an important aspect of the problem." *Id*. at 995 (quoting *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

EPA's open refusal to consider the air pollution-reduction benefits forgone by delaying compliance deadlines is a clear violation of the Clean Air Act and this Court's binding precedent. EPA's Final Delay Rule is based upon a patent and fundamental error, plain on the face of EPA's own decision documents, and should be summarily reversed.

If the Court does not summarily reverse, it should expedite these proceedings so that oral argument may be held no later than April 2026.

## BACKGROUND

**Section 111**. Section 111 of the Clean Air Act directs EPA to list "categories of stationary sources" that it concludes "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A). For each source category, EPA must prescribe federal "standards of performance" for new, modified, and reconstructed sources that reflect the "degree of emission limitation achievable" using the "best system of emission reduction" that has been "adequately demonstrated," taking into account factors such as emissions reductions, costs, and energy requirements. *Id.* § 7411(a)(1), (b)(1)(B). *See also Sierra Club*, 657 F.2d at 326. For pollutants such as

methane, the agency must also issue emission guidelines for existing sources, which are implemented by state plans submitted to and subject to approval by EPA. 42 U.S.C. § 7411(d).

**The 2024 Rule**. On March 8, 2024, pursuant to its Section 111 authority, EPA promulgated a rule strengthening the oil and gas source category's new source standards for methane and volatile organic compounds and establishing emission guidelines for state plans to limit methane emissions from existing sources. 89 Fed. Reg. 16820, 16826–27 (Mar. 8. 2024) ("2024 Rule"). In the 2024 Rule, EPA established standards (consisting of emission limitations, compliance assurance measures, and compliance deadlines) for each kind of covered equipment in the category. In each such decision, EPA determined the "best system of emission reduction," weighing the urgency of reducing the public health and environmental damage from emissions against the appropriate lead time that would be required to comply with the standards. *Id*. at 16867 (explaining EPA's consideration of emissions benefits "for each regulated emission source and taken together as a whole"); *id*. at 17010 (finding that a 24-month deadline for state plans would "accommodate the challenges" while ensuring the rule would "be timely implemented given the urgent need of climate change"); *id.* at 17025 (concluding that the final rule "comports with the EPA's [Clean Air Act] section 111 obligation to reduce dangerous pollution and responds to the urgency expressed by the current

4

Congress"). The Agency calculated that the 2024 Rule would avoid approximately

$110 billion in climate-related and health-related damages. *Id.* at 16836. EPA

concluded that "based on the totality of circumstances, the advantages that the rule

provides … outweigh its disadvantages, namely cost of industry compliance in the

context of the industry's revenue and expenditures." *Id*. at 16868.

**Reconsideration**. Between April and May 2024, EPA received several

petitions for reconsideration of the 2024 Rule requesting that the Agency

extend compliance deadlines due to cost and feasibility concerns. The Agency

agreed to reconsider two narrow issues: exemptions for temporary flaring and

requirements for the net-heating value of control devices; but it did not extend

any compliance deadlines. 90 Fed. Reg. 3734 (Jan. 15, 2025).

On January 20, 2025, President Trump signed Executive Order 14154,

"Unleashing American Energy," and in response, EPA announced that it would

reconsider the 2024 Rule more broadly.[2]

**The Interim Final Rule**. In July 2025, EPA adopted an Interim Final

Rule, with no prior notice or opportunity for comment, delaying compliance as

---

[2] EPA, *EPA Launches Biggest Deregulatory Action in U.S. History* (Mar. 12, 2025),
https://www.epa.gov/newsreleases/epa-launches-biggest-deregulatory-action-us-
history; EPA, *Trump EPA Announces OOOO b/c Reconsideration of Biden-Harris
Rules Strangling American Energy Producers* (Mar. 12, 2025),
https://www.epa.gov/newsreleases/trump-epa-announces-oooo-bc-reconsideration-
biden-harris-rules-strangling-american.

EPA continues to reconsider the 2024 Rule. 90 Fed. Reg. 35966, 35969–70 (July 31, 2025).[3]

The Interim Final Rule extended new-source deadlines to January 22, 2027—extensions of up to nearly three years from the deadlines established in the 2024 Rule—for the Super Emitter Program, process controller standards, storage tank standards, leak repair requirements, and compliance assurance requirements for combustion devices, flares, and closed vent systems (devices used for compliance across multiple standards). 90 Fed. Reg. at 35970–77; Proville Mirtich Decl. (App'x at 099) at ¶¶ 33, 34. As for existing sources, the Interim Final Rule also postponed the state plan submission deadline for 10 months to January 22, 2027—effectively delaying *every* requirement for existing sources in the 2024 Rule. 90 Fed. Reg. at 35977–79.

Petitioners promptly sought review of the Interim Final Rule, *Environmental Defense Fund, et al. v. Zeldin*, Nos. 25-1164 and 25-1168, and filed a motion for summary vacatur challenging the Agency's reliance on the

---

[3] While pursuing that still-ongoing reconsideration, EPA did not seek to stay the rule under its authority in 42 U.S.C. § 7607(d)(7)(B)—an authority that is limited to a maximum three-month delay and improper use of which this Court has previously rejected. *See Clean Air Council v. Pruitt*, 862 F.3d 1, 8–10, 14 (D.C. Cir. 2017) (vacating agency stay of Section 111 oil and gas regulations for noncompliance with section 7607(d)(7)(B)'s requirements); *see also Air All. Houston*, 906 F.3d at 1061–65. The delays promulgated through the Interim Final Rule and, now, the Final Delay Rule vastly exceed that maximum three-month stay authority.

"good cause" exemption under Administrative Procedure Act Section 553(b)(B), as well as the Agency's attempt to impermissibly circumvent the Clean Air Act's limitations on stays pending reconsideration. Doc. 2130555. That motion is fully briefed and remains pending. Petitioners also filed detailed comments on the actions taken in the Interim Final Rule during the post-hoc comment period offered by EPA.[4]

**The Final Delay Rule**. On December 3, 2025, EPA published a final rule extending the 2024 Rule's compliance dates and plan submission deadlines. 90 Fed. Reg. 55671. In addition to affirming the delays instituted without prior notice in the Interim Final Rule, the Final Delay Rule added two deadline extensions that were not even discussed in the Interim Final Rule: a further 180 days for sources to comply with the net-heating-value monitoring requirement for flares and an additional 360 days for sources to submit annual compliance reports. *Id.* at 55674.

EPA cited Section 111 as the sole statutory authority for all aspects of the Final Delay Rule, *id.* at 55676, 55673, yet failed to analyze or weigh the health or environmental impacts of the increased pollution caused by the delays. The Agency did not quantify, or even attempt to quantify, the forgone reductions from delaying the 2024 Rule's new-source standards. *See Economic Impact Analysis for the*

---

[4] Comments of Environmental Defense Fund et al. (Doc. ID EPA-HQ-OAR-2025-0162-0178), App'x at 065 ("Petitioner Comments").

7

*Extension of Deadlines in the NSPS OOOOb and EG OOOOc* (July 23, 2025) ("EIA") at 1;[5] *Affirmation of Economic Impact Analysis for the Interim Final Rule* (Oct. 31, 2025) ("Final EIA").[6] For the existing-source emission guidelines, EPA prepared a cursory economic impacts memorandum, *id*., that calculated forgone reductions from their delay—but declared that the memorandum "was not part of the EPA's decision-making and has no independent effect." *Response to Public Comments on the July 31, 2025 Interim Final Rule* ("RTC") at 31.[7] EPA likewise did not weigh any anticipated environmental or health harms against operators' claims of technical challenges and cost. *See* 90 Fed. Reg. at 55673–74.

While EPA previously determined that the 2024 Rule would avoid approximately $110 billion in climate-related damages and up to $7 billion in ozone-related health benefits, 89 Fed. Reg. at 16836, the Agency declined to assess the monetary climate or ozone pollution damages from the Final Rule. EIA at 10. Instead, EPA rested its entire justification for the major delays in compliance deadlines on concerns raised in operators' previously submitted petitions for reconsideration. *See* 90 Fed. Reg. at 55673–74.

---

[5] Available at https://www.regulations.gov/document/EPA-HQ-OAR-2025-0162-0025. *See also* App'x at 049.

[6] *See* App'x at 062.

[7] Available at https://www.regulations.gov/document/EPA-HQ-OAR-2025-0162-0673; *see also* App'x at 045.

In doing so, EPA rejected Petitioners' comments objecting to the delay of compliance deadlines without considering the lost public health and environmental benefits. In response to comments insisting that the agency must consider factors including emissions impacts, EPA stated that it was "not required to engage with [Section 111's] BSER factors," because the current rulemaking addressed only compliance deadlines. RTC at 27; *see also* 90 Fed. Reg. at 55674 (describing rule as limited to "compliance deadline issues"); RTC at 27 (stating that pushing back compliance dates by months or years was "not a true change in agency policy"). EPA did not substantively address Petitioner's comment that this Court's decision in *American Lung Association* required the Agency to weigh the public health and welfare impacts of the Final Rule. RTC at 46–47.

Petitioners immediately challenged the Final Rule, Petition for Review, No. 25-1275 (Dec. 3, 2025) (Doc. 2149019); the Court consolidated this petition and those challenging the Interim Final Rule, Order, No. 25-1275 (Dec. 9, 2025) (Doc. 2149415).

## STANDING

Petitioners have standing in this case for the same reasons set forth in their motion for summary vacatur challenging the Interim Final Rule. IFR MSV at 11–13, Doc. 2130555 (Aug. 18, 2025). The Final Delay Rule inflicts concrete,

particularized, and ongoing injuries on Petitioners and their members that are traceable to EPA's action and redressable by this Court. *See* App'x at 009-370.

EPA's delays have quantifiable, immediate, and harmful emissions consequences that are compounded each day they remain in effect. Proville-Mirtich Decl. ¶ 38. Oil and gas facilities release the potent greenhouse gas methane, as well as hazardous air pollutants and volatile organic compounds that contribute to ground-level ozone and cause respiratory illness, cancer, and other serious health harms for people living nearby. *See* Proville-Mirtich Decl. Although EPA did not quantify the Final Delay Rules' emissions impacts for new sources, Petitioners estimate that the Final Delay Rule will increase pollution by a total 300,000 tons of additional methane emissions, 165,000 tons of smog-forming volatile organic compounds, and 12,000 tons of hazardous air pollutants from new sources by the end of 2026, which has the equivalent climate impact of over six million gasoline-powered passenger cars being driven for a year. *See* Proville-Mirtich Decl. ¶¶ 29-34 (explaining methodology). EPA itself acknowledged that the compliance delays will cause 3.8 million additional tons of methane, 960,000 additional tons of volatile organic compounds, and 36,000 additional tons of hazardous air pollutants from existing sources, EIA at 6 tbl.3. Petitioners estimate that the delay of the existing source standards will have the equivalent climate

10

impact of over one hundred and fifty million gasoline-powered passenger cars being driven for a year. Proville-Mirtich Decl. ¶ 37.

Petitioners are national and regional nonprofit organizations that advocate for stronger health and environmental protections on behalf of their members and the broader public. Petitioners' members and their families live, work, and recreate in close proximity to new and existing oil and gas facilities subject to the 2024 Rule and the Final Delay Rule. Petitioners' members are directly harmed by ozone-forming and hazardous air pollution, *see* Proville-Mirtich Decl. ¶¶ 15, 20, 27, and likewise suffer injuries related to climate change, to which methane pollution from the oil and gas sector is a major contributor, *see* Proville-Mirtich Decl. ¶¶ 13-14. By causing the additional pollution described above, the Final Rule will exacerbate these injuries and will deny Petitioners' members the full benefit of the 2024 Rule's safeguards.

## ARGUMENT

### I.    EPA's Final Delay Rule Clearly Violates Section 111, Warranting Summary Vacatur.

In issuing the Final Delay Rule, EPA acknowledged that it did not address key factors that must be considered when setting or revising Section 111 standards: the emissions reductions forgone and the consequent public health and environmental impacts. That failure flatly contravenes this Court's precedents—including *American Lung Association*, which squarely holds that EPA must

11

consider emissions impacts when amending Section 111 deadlines, since reducing pollution is "arguably the most important aspect" of the problem and "the central purpose" of the statute. 985 F.3d at 947, 993, 995.

Where, as here, the record reveals a patent legal error, the merits are "clear" and summary vacatur is appropriate. *See Cascade Broad. Group*, 822 F.2d at 1174; *Clean Air Council v. Pruitt*, 862 F.3d 1 (D.C. Cir. 2017) (granting summary vacatur for unauthorized rule delaying oil and gas emission standards under Section 111).

## A. Section 111 and This Court's Precedents Required EPA to Consider Emissions Impacts from Delayed Compliance Obligations.

This Court has repeatedly held that the *timing* of emissions-control obligations is an integral part of promulgating and amending EPA's air pollution rules. *See Clean Air Council*, 862 F.3d at 6 (finding EPA's delay of Section 111 methane rule compliance dates was "tantamount to amending or revoking a rule"); *Air All. Houston*, 906 F.3d at 1065–66 (setting aside delay of hazardous air pollutant rule because EPA failed to consider impacts of delay on health and environment); *Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 391 (D.C. Cir. 1973) (including compliance timelines under Section 111 in the consideration of substantive components of emissions standard determinations); *see also Env't Def. Fund v. EPA*, 716 F.2d 915, 920 (D.C. Cir. 1983) ("The suspension or delayed implementation of a final regulation normally constitutes substantive rulemaking").

12

Accordingly, in adopting the Final Delay Rule, EPA was required to consider the emission impacts of the delay and the attendant harms to people and the environment. *See Am. Lung Ass'n,* 985 F.3d at 993–995. As this Court recognized, Section 111 places a "high priority on efficiently and effectively reducing emissions." *Id.* at 947. Therefore, when proposing to delay implementation of Section 111 standards, EPA must consider "the need for prompt reduction of … emissions" and the "human and environmental costs" of the delay. *Id.* at 993. If it does not, the Agency has entirely "failed to consider an important aspect of the problem." *Id.* at 995 (quoting *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43).

## B. EPA's Failure to Consider Emissions Impacts of the Final Delay Rule Violated Section 111 and the Requirements of Reasoned Decision-making.

In a clear violation of Section 111 and this Court's precedents, EPA effectively disclaimed the need to consider—and in fact did not consider—the air pollution consequences of its actions. EPA asserted it "was not required to engage with the BSER factors" (which includes taking into account emissions impacts and resulting public health consequences), claiming it was not making substantive revisions.[8] *See* RTC at 27; *Michigan v. EPA*, 576 U.S. 743, 758–760 (2015) (finding it dispositive that EPA dismissed as "irrelevant" a factor the statute

---

[8] This is even though EPA admits that in amending the deadlines, it "revis[ed]" its prior "conclusions" about standard feasibility with "new determinations," RTC at 26, which is in practice an acknowledgement of substantive rulemaking.

13

required it to consider); *Air All. Houston*, 906 F.3d at 1064 (by its "own repeated admissions," EPA did not satisfy the substantive requirements of the Clean Air Act in amending deadlines). And, indeed, the Final Rule fails to analyze or weigh the health and environmental impacts of the increased pollution resulting from the delays.

EPA altogether refused to quantify forgone emissions reductions for the new-source standard delays—arbitrarily treating them as zero. *See supra* p. 7–8; *Ctr. for Biological Diversity v. NHTSA*, 538 F.3d 1172, 1200 (9th Cir. 2008) (ruling the agency's failure to quantify emissions impacts arbitrary and capricious because "the value of carbon emissions reduction is certainly not zero"). EPA also expressly stated that it viewed the harms from the forgone emissions reductions as irrelevant to its decision-making, *see* RTC at 31, even while acknowledging an estimated additional 3.8 million tons of methane, 960,000 tons of volatile organic compounds, and 36,000 tons of hazardous air pollutants stemming from the delay of existing source standards.

When Petitioners commented that the Final Rule violated *American Lung Association*'s requirements to consider the public health impacts associated with these emissions, EPA simply did not respond. RTC at 46–47. By ignoring the environmental and public health consequences of the Final Rule, EPA offered a "radically incomplete explanation" for its decision to extend the 2024 Rule's

14

deadlines and ignored "arguably the most important aspect" of the problem. *Am. Lung Ass'n,* 985 F.3d at 994–95.

While the Final Rule ignores emissions impacts, it justifies each of the delays based exclusively on "information received in petitions for reconsideration" submitted by the regulated industry and includes no attempt to weigh those concerns against increased harm to public health and the climate. *See* 90 Fed. Reg. at 55673–74.[9] Thus, while EPA gave great weight to operators' feasibility concerns, it gave absolutely *no* weight—contrary to Section 111—to the need to "reduc[e] emissions as much as practicable," *Sierra Club*, 657 F.2d at 326, nor to "the need for speed" when dealing with harms to public health, *i.e.*, "the added environmental and public health damage likely to result from slowing down" implementation of the standards, *Am. Lung Ass'n*, 985 F.3d at 993; *see also id*. at 993–94 (vacating EPA's rule extending compliance period for relying solely on "general claims that amended timelines [were] appropriate" and responding to comments by "tersely reiterat[ing] its stated interest in giving … regulated parties more time to comply").

---

[9] *See also* 90 Fed. Reg. at 55675 (for response to comments on emission impacts). Petitioners filed extensive comments contesting the compliance issues asserted in petitions for reconsideration, *see* Petitioner Comments at 5–29, highlighting that many of these issues had already been raised and thoroughly addressed by EPA in the 2024 Rule. *See* IFR MSV at 5–6.

Simply put, this fact pattern is a carbon copy of the one this Court confronted in *American Lung Association*: "Petitioners called the EPA's attention to an important aspect of the regulatory problem, and the EPA looked away." *Am. Lung Ass'n*, 985 F.3d at 994. EPA plainly cannot use Section 111 to delay rules without considering "the central purpose" of Section 111. *Id.* at 993. EPA's avowed disregard for emissions impacts and failure to undertake the analysis of statutory factors required by Section 111 is a clear error that warrants summarily vacating the Final Delay Rule.

## II.     If the Court does not Grant Summary Vacatur, It Should Order Expedited Review.

If the Court does not grant summary vacatur, Petitioners request expedited briefing and consideration of the merits of these consolidated cases. EPA's actions are "subject to substantial challenge" and failure to expedite "will cause irreparable injury." D.C. Cir. Handbook 34. In response to Petitioners' request for a position on expedited review, EPA stated it "opposes Petitioners' proposal for expedited briefing; the Court should adopt the approach set forth in EPA's December 19 filing" (Doc. 2151436). Intervenor Domestic Energy Producers Alliance ("DEPA") and Intervenors API, GPA Midstream, AXPC, INGAA, and IPAA et al. (the "Associations") oppose Petitioners' proposal for expedited briefing and support the approach set forth in EPA's December 19th filing.

As discussed in the above section on standing and harm, Petitioners and their members suffer ongoing, irreparable harm from the air pollution allowed by the Final Delay Rule. The original deadlines for the new source standards have already run, and the original deadline for states to submit implementing plans for existing source standards is rapidly approaching in March 2026. As is demonstrated in the attached declaration, the delays effected by the Final Rule will irreparably injure Petitioners and their members. Proville-Mirtich Decl. ¶¶ 16-39. Swift resolution is necessary to ensure meaningful relief for the unjustified and harmful suspension of important public health protections.

There is an additional public interest in addressing EPA's emergent pattern of deregulating through a series of short-term actions that will evade meaningful review on a normal judicial timetable.[10] As a practical matter, Respondents' proposal—that the Court decline to decide the summary vacatur motions and proceed under an extended briefing schedule—would allow the compliance deadline extensions to go unreviewed. *See* EPA's Reply in Supp. of Mot. to Govern at 2, Doc. 2151436. Accordingly, if the Court does not grant summary vacatur,

---

[10] Review is especially important when the agency is undertaking a sweeping pattern of delaying compliance deadlines across a range of regulations *See* Pet'rs.' Resp. to Mot. to Govern (Doc. 2150239) at 3–4; *see also* Bethany A. Davis Noll & Alec Dawson, *Deregulation Run Amok: Trump-Era Regulatory Suspensions and the Rule of Law* 11-12 (Inst. For Policy Integrity 2018), https://policyintegrity.org/files/publications/Deregulation_Run_Amok_Report.pdf.

Petitioners request an expedited briefing schedule that would allow for oral

argument no later than April 2026.[11]

## CONCLUSION

The Final Delay Rule should be summarily vacated.


DATED: December 23, 2025                    Respectfully submitted,

s/ Margaret A. Coulter                      /s/ Grace M. Smith
Margaret A. Coulter                         Grace M. Smith
Jason C. Rylander                           Rosalie Winn
Center for Biological Diversity             Edwin LaMair
1411 K Street NW, Suite 1300                Leah Fattor
Washington, D.C. 20005                      Peter Zalzal
(202) 961-4820                              Vickie Patton
mcoulter@biologicaldiversity.org            Environmental Defense Fund
jrylander@biologicaldiversity.org           2060 Broadway, Ste. 300
                                            Boulder, CO 80302
Counsel for Center for Biological           (303) 447-7560
Diversity                                   gsmith@edf.org
                                            rwinn@edf.org
/s/ Darin Schroeder                         elamair@edf.org
Darin Schroeder                             lfattor@edf.org
Mary Y. Sasso                               pzalzal@edf.org
Francis W. Sturges, Jr.                     vpatton@edf.org
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 624-0234

---

[11] Petitioners are prepared to file accelerated opening and reply briefs to help enable such a schedule and believe the schedule we propose would still allow Respondents the Federal Rule of Appellate Procedure default of 30 days to respond to our opening brief. In light of the overlap between this case and the consolidated challenges to the Interim Final Rule, and the fact that all the petitions have been consolidated, the Interim Final challenges (Nos. 25-1164 and 25-1168) should be briefed together in this case on an expedited basis.

dschroeder@catf.us
msasso@catf.us
fsturges@catf.us

Counsel for Earthworks

/s/ Wendy Bloom
Wendy Bloom
Max Lopez
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
wbloom@elpc.org
mlopez@elpc.org

Counsel for Environmental Law &
Policy Center

/s/ Meredith Hankins
Meredith Hankins
David Doniger
Abirami Vijayan*
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, D.C. 20005
(646) 448-3818
mhankins@nrdc.org
*Not admitted in District of
Columbia.

Counsel for Natural Resources
Defense Council

Sean H. Donahue
Keri R. Davidson*
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com
keri@donahuegoldberg.com
*Not admitted in District of
Columbia.

Counsel for Environmental
Defense Fund

/s/ Alexandra O. Schluntz
Alexandra O. Schluntz
Robin Cooley
Earthjustice
1125 17th Street #1010
Denver, CO 80202
(303) 996-9612
aschluntz@earthjustice.org
rcooley@earthjustice.org

Counsel for Clean Air Council,
Dakota Resource Council, Food &
Water Watch, Fort Berthold
Protectors of Water & Earth Rights,
and GreenLatinos

/s/ Andres Restrepo
Andres Restrepo
Sierra Club
50 F St., NW, Eighth Floor
Washington, D.C. 20001
(856) 240-0964
Andres.Restrepo@sierraclub.org

Counsel for Sierra Club

19

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion for Summary Disposition and Vacatur contains 4,067 words, as counted by counsel's word processing system, and thus complies with the 5,200-word limit. See Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

Dated: December 23, 2025

*/s/ Grace M. Smith*
Grace M. Smith

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and D.C. Circuit Rule 26.1,

Movants Environmental Defense Fund, Clean Air Council, Center for Biological

Diversity, Dakota Resource Council, Earthworks, Environmental Law & Policy

Center, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights,

GreenLatinos, Natural Resources Defense Council, and Sierra Club state that they

are non-profit environmental organizations without any parent corporation or

stock.

DATED: December 23, 2025                    Respectfully submitted,

*s/ Margaret A. Coulter*                    */s/ Grace M. Smith*
Margaret A. Coulter                         Grace M. Smith
Jason C. Rylander                           Rosalie Winn
Center for Biological Diversity             Edwin LaMair
1411 K Street NW, Suite 1300                Leah Fattor
Washington, D.C. 20005                      Peter Zalzal
(202) 961-4820                              Vickie Patton
mcoulter@biologicaldiversity.org            Environmental Defense Fund
jrylander@biologicaldiversity.org           2060 Broadway, Ste. 300
                                            Boulder, CO 80302
*Counsel for Center for Biological*         (303) 447-7560
*Diversity*                                 gsmith@edf.org
                                            rwinn@edf.org
*/s/ Darin Schroeder*                       elamair@edf.org
Darin Schroeder                             lfattor@edf.org
Mary Y. Sasso                               pzalzal@edf.org
Francis W. Sturges, Jr.                     vpatton@edf.org
Clean Air Task Force
114 State St., 6th Floor
Boston, MA 02109
(617) 624-0234

21

dschroeder@catf.us
msasso@catf.us
fsturges@catf.us

*Counsel for Earthworks*

/s/ Wendy Bloom
Wendy Bloom
Max Lopez
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
wbloom@elpc.org
mlopez@elpc.org

*Counsel for Environmental Law & Policy Center*

/s/ Meredith Hankins
Meredith Hankins
David Doniger
Abirami Vijayan*
Natural Resources Defense Council
1152 15th Street, NW, Suite 300
Washington, D.C. 20005
(646) 448-3818
mhankins@nrdc.org
*Not admitted in District of Columbia.

*Counsel for Natural Resources Defense Council*

Sean H. Donahue
Keri R. Davidson*
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com
keri@donahuegoldberg.com
*Not admitted in District of Columbia.

*Counsel for Environmental Defense Fund*

/s/ Alexandra O. Schluntz
Alexandra O. Schluntz
Robin Cooley
Earthjustice
1125 17th Street #1010
Denver, CO 80202
(303) 996-9612
aschluntz@earthjustice.org
rcooley@earthjustice.org

*Counsel for Clean Air Council, Dakota Resource Council, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights, and GreenLatinos*

/s/ Andres Restrepo
Andres Restrepo
Sierra Club
50 F St., NW, Eighth Floor
Washington, D.C. 20001
(856) 240-0964
Andres.Restrepo@sierraclub.org

*Counsel for Sierra Club*

22

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), I certify that the parties to this case are set forth below.

<u>Petitioners</u>: Petitioners in this case are Environmental Defense Fund, Clean Air Council, Center for Biological Diversity, Dakota Resource Council, Earthworks, Environmental Law & Policy Center, Food & Water Watch, Fort Berthold Protectors of Water & Earth Rights, GreenLatinos, Natural Resources Defense Council, and Sierra Club.

<u>Respondents</u>: Respondents in this case are the United States Environmental Protection Agency ("EPA") and Lee Zeldin, in his official capacity as Administrator of the EPA.

<u>Intervenors</u>: None at present.

<u>Amici Curiae</u>: None at present.

Dated: December 23, 2025

*/s/ Grace M. Smith*
Grace M. Smith

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of December, 2025, I filed the

foregoing motion on Respondents with the Court's CMS/ECF system, which will

notify counsel of record.

*/s/ Grace M. Smith*
Grace M. Smith